IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v.<br><br>AMIR BOYER<br>HANS GADSON<br>DENNIS HARMON | NO. 18-249-6, 18-249-8, and 18-249-9 |

### MEMORANDUM RE: MOTIONS TO SUPPRESS

Baylson, J.                                                                                                                         August 6, 2019

## I.      Introduction

In this case involving allegations of conspiracy to traffic drugs, three of the nine defendants—Amir Boyer, Hans Gadson, and Dennis Harmon (collectively, "Defendants")—have moved the Court for an order suppressing evidence seized during a search of a residence located at 3234 N. Sydenham Street in Philadelphia, Pennsylvania.  (ECF 159, 215, 260, 295).  For the following reasons, the Motions to Suppress will be DENIED.

## II.     Facts and Procedural History

### A.      The Shooting

On September 11, 2017, members of the Philadelphia Police Department responded to a shooting on the 2700 block of North 22nd Street in Philadelphia around 5:40 P.M.  A male victim was transported to the hospital where he was later pronounced dead, and several inconsistent reports were made about the description of the shooter and a potential getaway vehicle.  Detective Justin Falcone interviewed a security guard from an adjacent grocery store.  The security guard, who heard but did not see the shooting, reported seeing a black male in a white t-shirt "hurriedly walk to a white SUV and exit the area" after the shooting occurred.  (ECF 283, "5/30/19 Hearing

1

Tr.," at 10:5–9, 14:3–5, 34:7–8). Although he also mentioned a black male in a red t-shirt who was across the street, the security guard reported that he did not believe that man was involved in the shooting. (Id. at 14:5–8). He then gave Detective Falcone a piece of paper with a Pennsylvania license plate number written on it, which he said he obtained from a patron of the grocery store who could connect that license plate number to the white SUV in question. (Id. at 10:9–12). The patron himself was not identified or interviewed by police, and Detective Falcone did not speak to anyone who actually saw the shooting. (Id. at 10:13–16, 34:3–35:20, 39:1–5). Although Detective Falcone had the capability of listening to radio broadcasts and to call the persons manning 911 calls to obtain information regarding potential suspects, he did not hear any such broadcasts reporting that the shooter was wearing a dark gray sweat suit, that the shooter fled in a burgundy Jeep, or that the shooter fled in a blue sedan. (Id. at 32:18–33:14).

Officer Charles Rillera, who also responded to the scene, reported interviewing an additional ten to fifteen people, but did not feel that any of them gave credible statements. None of the additional interviewees provided a description of the shooter or a potential getaway vehicle. (Id. at 58:19–59:3). Officer Rillera testified that he was aware of multiple conflicting broadcasts reporting descriptions of the shooter or shooters, including a report of a burgundy Jeep as the getaway vehicle. (Id. at 94:14–95:3).

**B.     The House**

The license plate number obtained by Detective Falcone was broadcast over police radio and the Police Department's citywide band. (Id. at 10:19–21). Officer Rillera received the broadcast while in his squad car and ran the reported license plate number through a Bureau of Motor Vehicles database. (Id. at 60:6–16). The license plate belonged to a white Jeep Cherokee that was registered to Abdul West at 3234 N. Sydenham Street, Philadelphia. (Id. at 60:18–19).

2

Officer Rillera then drove to that location with his partner, arriving at approximately 6:46 P.M. (Id. at 60:20–61:14). The white Jeep Cherokee with the reported license plate number was parked on the block, and Officer Rillera stopped to investigate. A crowd of people in front of 3234 N. Sydenham Street then dispersed. None of the people matched the description of the shooter. (Id. at 61:22–63:4). Officer Rillera determined that no one was inside or outside the Jeep that would pose a danger to the public or his fellow officers. (Id. at 63:19–24). However, he remained on scene to search the immediate area for physical evidence that might be related to the homicide. (Id. at 64:4–17).[1] Other officers eventually arrived on scene. (Id. at 65:13–19). One of those officers found a set of keys on the ground that belonged to the white Jeep in question. (Id. at 22:15–18; 72:7–12). At 7:20 P.M., Detective Falcone drove down the block with the security guard who gave him the license plate number. (Id. at 15:13–18). He did so to allow the security guard to identify the Jeep Cherokee as the white SUV he saw leaving the scene of the shooting. (Id. at 15:16–16:20).

At some point, Harmon exited the home at 3234 N. Sydenham Street and walked across the street. (Id. at 65:22–66:2). It is unclear whether any of the officers saw Harmon exit the property, though they noted him walk across the street and then return to its porch. (Id. at 65:24–66:7). Upon his return, the officers began to question Harmon. (Id. at 66:5–7). He told them that he lived at the residence alone and that he did not know who owned the white Jeep Cherokee registered to that address. (Id. at 69:11–15, 70:3–12). Harmon was never handcuffed or placed under arrest, and he was eventually transported to the Philadelphia Homicide Division for further questioning. (Id. at 70:13–20, 86:20–22). Officer Rillera and his partner remained on the scene.

---

[1] At some point, the police and detectives on-scene learned that the shooting victim had died and that the investigation had become a homicide investigation. (Id. at 15:19–16:8, 72:13–15, 121:23–122:4).

3

(Id. at 86:21–24).

### C. The Warrantless Entry

Detective Falcone and another detective arrived at 3234 N. Sydenham Street at 7:50 P.M. that same evening. (Id. at 86:25–87:4). Detective Falcone informed the officers that the home was being held for a search warrant and learned that the officers had not yet entered the home. (Id. at 87:10–19). The officers determined that they should "clear" or "sweep" the property at that time.[2] (Id. at 88:2–6). Officer Rillera testified that, prior to entering the property, "everything was under control" and admitted that he did not express any concern that the shooter was in the house. (Id. at 105:15–21). Although various officers had been present outside the property in the proceeding two hours, (id. at 110:13–20), no one suggested that they secure the inside of the home before Detective Falcone arrived. (Id. at 110:21–23).

Four law enforcement officers, Detectives Falcon and Sweeny and Officers Rillera and Nelson, then entered the premises, and exited at approximately 8 P.M. (Id. at 88:5–6, 118:6–9). No one was discovered inside, but Detective Falcone testified that marijuana, narcotics, and items related to narcotics were in plain view as the officers secured the inside of the premises. (Id. at 26:13–27:11). He relayed this information to Detective Brian Peters of the Homicide Division. (Id. at 31:12–16).

Officer Rillera admitted that he reentered the home one time to secure the back door after securing the premises. (Id. at 120:23–121:1). Other than that, although poll camera video shows the officers walking up to the porch and remaining out of view for periods of time following the

---

[2] Officer Rillera testified that the purpose of "clearing" the property was "looking for a person and a person only." (Id. at 88:13–14). He further explained that he was "trying to inquire about the registered owners of the vehicle and their possible involvement with the shooting." (Id. at 88:14–16).

4

initial entry, (Id. at 126:18–127:12), it is unclear from the video or testimony that anyone reentered the front door of the home after the sweep was concluded, and prior to receiving a warrant.[3]

### D. The 2017 Warrant

Detective Peters then gathered all the various pieces of information collected by the officers and other detectives and relayed it to Detective Joseph Centeno, who acted as the affiant for a search warrant of 3234 N. Sydenham Street. (Id. at 141:17–142:12, 143:18–20, 164:19–165:1). Detective Peters did not tell Detective Centeno that there was a report of a burgundy vehicle fleeing the scene of the shooting, or that a blue Impala had been seen leaving the scene of the shooting. (Id. at 156:17–24, 161:8–19).[4] This information was therefore never presented to the magistrate judge who issued the warrant.

The express purpose of seeking the warrant was to search for evidence of a homicide. (Id. at 158:24–1). However, the warrant also listed that the police would be searching for items related to drug offenses. Detective Peters explained that he told Detective Centeno to include those items specifically because they had been observed when the detectives and officers entered 3234 N. Sydenham Street to clear it. (Id. at 159:13–161:7).

The warrant was issued on September 11, 2017, at 11:50 P.M. Members of the Philadelphia Police Department then executed the search warrant and seized drugs and numerous items related to drug trafficking.

### E. The 2018 Warrant

Boyer was charged in a Superseding Indictment for conspiracy and drug offenses on

---

[3] Harmon argues that the video shows flashlight beams emitting from upper windows of the residence after the police finished securing the house. (Id. at 124:11–125:6).
[4] Detective Peters also did not tell Detective Centeno that the Jeep Cherokee had apparently been reported stolen. (Id.).

5

October 17, 2018. Law enforcement had observed him coming and going from 3234 N. Sydenham Street on October 16, 2018, and they arrived at the property to arrest Boyer on October 18, 2018. Officers announced their presence and waited a reasonable amount of time. When no one came to the door, they entered the home and took Boyer into custody. Officers then conducted a protective sweep of the home and observed a black duffel bag with marijuana protruding from the top. The residence was secured until a search warrant was obtained. Members of the Federal Bureau of Investigation ("FBI") executed the search warrant that same day—October 18, 2018—and seized drugs and numerous items related to drug trafficking.

### III. Parties' Contentions

Defendants contend that the police officers' warrantless entry into 3234 N. Sydenham Street was done without probable cause or exigent circumstances and thus violated their Fourth Amendment rights to be protected from "unreasonable searches and seizures." U.S. Const. amend. IV. Defendants also argue that the eventual warrant was void *ab initio* because it was impermissibly based on observations made during the illegal entry into the home, and because it was premised on an affidavit that contained inaccurate and misleading information.[5] Defendants further argue that there was no probable cause to issue the warrant, and that it was an unconstitutional general warrant because it vested the police with unbridled discretion to search the home. Defendants also contend that the search and the items seized exceeded the scope of the warrant, and that certain items seized cannot be identified as belonging to each of these Defendants and must be suppressed as to each of them, individually. Boyer further challenges the 2018 warrant

---

[5] Specifically, Defendants argue that the affidavit falsely portrayed the purpose of the officers' prior warrantless entry into the house as to "establish that no one was in the residence and to secure the property," and that it misleadingly implied that their entry was motivated by exigent circumstances. Defendants also contest the affidavit because it omitted information broadcast over police radio concerning contradictory descriptions of the shooter and getaway vehicle.

as void *ab initio* because he says it was based on false and misleading statements and material omissions, and because the facts supporting probable cause in the warrant suffered from staleness.

The Government argues first that Boyer and Gadson both lack standing to challenge the search of 3234 N. Sydenham Street that took place on September 11, 2017, because they have not demonstrated that they had a reasonable expectation of privacy in the home.[6] The Government concedes that there may not have been exigent circumstances to enter the home, but that the 2017 search warrant and resulting search were nevertheless supported by probable cause. It contends that facts of this case therefore do not call for application of the exclusionary rule. The Government also argues that Defendants have failed to establish material false statements or omissions in the 2017 affidavit, as required by Franks v. Delaware, 438 U.S. 154 (1978) and Wilson v. Russo, 212 F.3d 781, 787 (3d Cir. 2000). Likewise, the Government argues that the 2018 search warrant was valid and supported by probable cause, and that the resulting search of 3234 N. Sydenham Street and arrest of Boyer were lawful.

**IV.  Discussion**

    **A.  Defendants' Standing to Challenge the 2017 Search**

        **1.  Boyer's Reasonable Expectation of Privacy**

Initially, the Court finds that Boyer has standing to challenge the 2017 "sweep" of 3234 N. Sydenham Street as well as the eventual warrant, search, and seizure of property. Boyer asserts in his Motion to Suppress that he was residing at the property at the time of the search, and therefore enjoyed an expectation of privacy regarding the premises. (ECF 159 at ¶¶ 6–7). However, when officers questioned Harmon outside the home on September 11, 2017, Harmon told them that he

---

[6] The Government highlights that Boyer told police he did not live at 3234 N. Sydenham Street on September 11, 2017.

7

lived at the residence alone. Boyer approached the officers while they were questioning Harmon and told them that his family previously owned the house, but did not say that he was living at the residence. (5/30/19 Tr. at 85:23–86:4). He explained that he was waiting to pick up a fare as a Lyft driver. (Id. at 78:16–18). When the police searched the home later that evening and early the next morning, mail was discovered and seized that was in Boyer's name. (Id. at 166:15–19).

To have standing to challenge a search, a defendant must show that he had a legitimate expectation of privacy in the area searched and that his personal expectation of privacy was violated. Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Rakas v. Illinois, 439 U.S. 128, 143 (1978). Visiting another person's home for a short period does not afford a defendant a reasonable expectation of privacy in that property. See United States v. Perez, 280 F.3d 318, 337–38 (3d Cir. 2002).

Here, the issue of whether Boyer stayed at, resided at, or owned 3234 N. Sydenham Street is ambiguous. The Government relies on Harmon's statements to police about living at the property alone, but police also explained that they found those statements suspicious considering the fact that Abdul West's Jeep Cherokee was registered to the property. The fact that Boyer denied owning the property while the police were questioning Harmon does not definitively establish whether or not he did, in fact, own, reside, or stay there. Mail was found inside the home that bore Boyer's name, and he was later deemed to be residing at the property for purposes of the 2018 search. This evidence is sufficient to support Boyer's argument that he used the home as a residence during the 2017 search, and that he had a reasonable expectation of privacy in the property at that time.

### 2. Gadson's Reasonable Expectation of Privacy

The Court finds that Gadson does not have standing to challenge the 2017 "sweep" of 3234

8

N. Sydenham Street as well as the eventual warrant, search, and seizure of property. Gadson presents no evidence that he resided at the home or otherwise enjoyed a reasonable expectation of privacy in the residence on September 11, 2017. In a memorandum submitted on August 1, 2019, (ECF 335), Gadson highlights that the Government alleged that he was regularly present on the block of 3200 N. Sydenham Street and that he was engaged in the business of a drug trafficking organization that used the 3234 N. Sydenham Street residence as a "stash house." According to Gadson, these allegations liken the property to an office or work environment. See O'Connor v. Ortega, 480 U.S. 709, 718 (1987) ("Given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis."); Mancusi v. DeForte, 392 U.S. 364, 369 (1968) ("It has long been settled that one has standing to object to a search of his office, as well as of his home."). But the Government's allegations hardly suggest that the property was used as such, and it is well established that a connection with a property solely for drug-related activities is insufficient to confer standing. See United States v. Perez, 280 F.3d 318, 337–38 (3d Cir. 2002). Gadson's Motion to Suppress will be denied for lack of standing.

### B. Probable Cause for the 2017 Warrant, Search, and Seizure

The Court further finds that the 2017 warrant was supported by probable cause, and that the resulting execution of that warrant was lawful.

#### 1. The Effect of Securing the Home without a Warrant

Defendants[7] argue at length that the police sweep of the property was made without exigent circumstances, and that certain information contained in the affidavit used to obtain the warrant

---

[7] Given the Court's conclusion that Gadson does not have standing to challenge the initial entry or later search of 3234 N. Sydenham Street, the Court's continued use of the collective term "Defendants" applies only to Boyer and Harmon.

was discovered through that unlawful search. The Government concedes that "under existing case law, exigent circumstances may not have existed," (ECF 306 at 7), but argues that the warrant was nonetheless supported by probable cause even if the Court were to redact the information from observations made during the initial sweep.[8]

Where an affidavit for a warrant is premised on information learned through an illegal entry, the Court need not exclude the evidence obtained by that warrant so long as the police had an independent source to support probable cause. See Murray v. United States, 487 U.S. 533, 539 (1988) (explaining that because "tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered"). Indeed, even where evidence is obtained in violation of a defendant's constitutional rights, that evidence is admissible at trial if the government can show "by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). The Court must therefore consider (1) whether a neutral justice would have issued the warrant even if not presented with the unlawfully-obtained information; and (2) whether the initial entry prompted the officers to obtain the search warrant. United States v. Herrold, 962 F.2d 1131, 1144 (3d Cir. 1992); see also United States v. Perez, 280 F.3d 318, 339 (3d Cir. 2002). "If the answers to these questions are yes and

---

[8] While the Court accepts the Government's concession on this point for purposes of the above analysis, it appears clear that the police's initial entry into the home was based on both probable cause and exigent circumstances. During extensive testimony, the Court learned that the police had specific knowledge that a white SUV with a specific license plate number was seen at the site of the murder, and that the same vehicle was registered to 3234 N. Sydenham Street. Police observed the vehicle outside that residence very shortly after the shooting, and a witness identified the vehicle as the same as the one he saw feeling the scene of the murder. Upon learning that the shooting victim died and that the investigation had become a murder investigation, the police had to have been able to clear the home of any potential threats to themselves or the surrounding community.

no respectively, . . . then the evidence seized during the warranted search, even if already discovered in the original entry, is admissible." Herrold, 962 F.2d at 1144.

It is clear in this case that the police would have sought a warrant to search 3234 N. Sydenham Street even if they had not entered the home and observed evidence of drug activity. Testimony showed that the police were in the process of seeking a warrant before they entered the home to secure it. Moreover, the affidavit that was presented to the judicial magistrate contained a sufficient basis to find probable cause, even without the information discovered while securing the home. Specifically, a man was observed leaving the scene of a murder in a white SUV with a specific Pennsylvania license plate number, that vehicle was registered to 3234 N. Sydenham Street, the vehicle was observed by law enforcement outside of the property shortly after the murder with its keys discarded in the dirt, and a witness identified the vehicle as the one that left the scene of the murder. Such facts support a finding of probable cause that evidence related to the murder might be found inside, even without the evidence of drug activity that was discovered in the home. See United States v. Jones, 994 F.2d 1051, 1055–56 (3d Cir. 1993) ("If there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases.").

When deciding whether to issue a warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision, whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." New York v. P.J. Video, Inc., 475 U.S. 868, 876 (1986) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). The resulting determination of probable cause must be given great deference. Illinois v. Gates, 462 U.S. 213, 236 (1983); United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993).

This Court need not determine whether probable cause actually existed, but rather whether the affidavit provided a "substantial basis" for finding probable cause. United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (citing Jones, 994 F.2d at 1054). Based on the foregoing information connecting the murder to the property at 3234 N. Sydenham Street, there was a substantial basis for finding probable cause in the police's affidavit even if the Court were to redact the additional information obtained while securing the property. The resulting warrant was thus facially valid, and the police's good faith[9] reliance on it precludes application of the exclusionary rule to the evidence seized. United States v. Leon, 468 U.S. 897, 922 (1984); Massachusetts v. Sheppard, 468 U.S. 981, 988 (1984); United States v. Williams, 3 F.3d 69, 73–74 (3d Cir. 1993). Indeed, it is well established that a police search and seizure conducted in reasonable reliance on a warrant issued by a detached and neutral magistrate will not trigger the exclusionary rule. See Leon, 468 U.S. at 912. "[T]he exclusionary rule is not an individual right and applies only where it 'result[s] in appreciable deterrence.'" Herring v. United States, 555 U.S. 135, 141 (2009) (quoting Leon, 468 U.S. at 909). The rule "serves to deter deliberate, reckless, or grossly negligent conduct." Id. at 144. The Court has found no evidence here of such deliberate, reckless, or grossly negligent conduct in executing the 2017 search warrant.

### 2. Misleading Information and Omissions in the Affidavit

In addition to challenging the affidavit for containing information learned during the initial,

---

[9] Defendants' contend that the police acted in bad faith because there is some evidence that officers may have re-entered the property after the house was secured, but before the warrant issued. Even assuming that the officers re-entered the home, such activity does not, in and of itself, constitute evidence of bad faith. Segura v. United States, 468 U.S. 796, 812 (1984). Nor does it show that the police acted in bad faith in executing the search warrant they later obtained (without reliance on those purported re-entries). Regardless, the Court finds that the search warrant was ultimately valid and that the evidence of drug activity in the residence would nonetheless have been discovered lawfully, even without reliance on the initial, warrantless entry. Whether the police re-entered the property has no bearing on that conclusion.

warrantless entry into 3234 N. Sydenham Street, Defendants also challenge the affidavit for containing misleading information and omitting certain other information.

A defendant has the right to challenge omissions and the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant. Franks, 438 U.S. at 155–56; Wilson, 212 F.3d at 787. The fruits of a search are subject to suppression if, after a hearing, the defendant establishes by a preponderance of the evidence that: (1) a supporting affidavit contained a false statement or omission, made knowingly or with reckless disregard for the truth; and (2) the false statement or omission was material to the probable cause determination. United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006). The Court must hold a Franks hearing if the defendant makes a "substantial preliminary showing" as to each prong. Id. (quoting Franks, 438 U.S. at 170).

Defendants have failed to make the substantial preliminary showing required for a Franks hearing. The first prong requires more than a mere error in the affidavit—it requires a showing of reckless disregard and an accompanying offer of proof that contradicts the affidavit. Yusuf, 461 F.3d at 383, 383 n.8. Defendants specifically contest that the affidavit implied the officers' warrantless entry into 3234 N. Sydenham Street took place immediately upon their arrival. Defendants also highlight that the affidavit omitted information about other descriptions of the shooter or getaway vehicle that were called into 911 or were broadcast over police radio.

First, the Court notes that the affidavit does not state that law enforcement entered the property immediately upon arrival. It simply states that the police entered the home to establish no one was inside and to secure the property. Although the Government may have conceded that this entry was ultimately made without exigency, there has been no evidence or testimony to conclude that the police entered the home for any reason other than the reason stated in the affidavit. Moreover, the Court has already explained that, even absent information related to the

warrantless entry, the affidavit contained sufficient evidence to support a finding of probable cause. The affiant's statements about the warrantless entry into 3234 N. Sydenham Street were therefore neither false nor material to the probable cause determination.

Second, Defendants have failed to show that the affidavit's omission of other descriptions about the shooter or getaway vehicle was made with knowing disregard for the truth or that it was material to the probable cause determination. Although different descriptions of a getaway vehicle were broadcast over police radio, the detectives and officers were within their authority to focus on the white SUV after speaking with witnesses present on-scene. Defendants present no credible argument for why law enforcement should have included the other vehicle descriptions in affidavit, nor do they explain how their omission destroys probable cause. Wilson, 212 F.3d at 787 (explaining that an affidavit need not include "every potentially evocative detail" to support a finding of probable cause). Even if the affidavit had included the other vehicle descriptions, it would also have included the description of a white SUV with a known license plate number that was observed leaving the murder scene and found outside 3234 N. Sydenham with its keys discarded in the dirt, and where it was identified by a witness to the shooting as being the same vehicle that he observed leave the scene. These facts, even alongside other vehicle descriptions broadcast over police radio or called into 911, support a finding of probable cause.

### 3. The Scope of the Warrant and its Execution

Defendants contended in their initial Motions that the warrant was an unconstitutional general warrant, that the search and seizure exceeded the scope of the warrant, and that certain items cannot be identified as belonging to each of the Defendants and therefore must be suppressed as to each of them, individually. However, Defendants have not highlighted any evidence or made specific arguments in briefing to support these contentions. Suppression will not be granted on

these bases.

## C. Probable Cause for the 2018 Warrant, Search, and Seizure

The Court also finds that law enforcement's search of 3234 N. Sydenham Street on October 18, 2018, was lawful.

Boyer argues that the federal search warrant obtained by FBI agents on October 18, 2018, was void *ab initio* because the evidence supporting probable cause was premised solely on information obtained during the warranted search of the premises by the Philadelphia Police Department on September 11, 2017. The affidavit submitted in support of the warrant application also explains that Boyer was arrested pursuant to a warrant inside 3234 N. Sydenham Street on October 18, 2018, and that a resulting "protective sweep" of the premises revealed a duffel bag with a "green leafy substance" protruding from the top. Boyer contests this portion of the affidavit, arguing that he was arrested without incident and that the sweep of the premises was really a warrantless search. Boyer thus argues that the October 18, 2018 warrant was issued based on information obtained during an illegal search, false and misleading statements and omissions, and stale facts.

The Court has already determined that execution of the 2017 search warrant was lawful, and therefore there was nothing improper about including information obtained during that search in the 2018 affidavit. Nor does the thirteen-month time period between the 2017 search and the application for the 2018 warrant render those facts so stale as to destroy probable cause. The lengthy affidavit detailed evidence of ongoing drug activity, beginning as early as March, 2017, and spanning until the morning that the 2018 warrant was issued. The magistrate judge was within her power to conclude that the information, presented as a whole, was not stale. This Court is required to give that decision great deference. Gates, 462 U.S. at 236.

Further, the FBI had probable cause to believe that Boyer was living at 3234 N. Sydenham Street at the time of his arrest—a conclusion that Boyer does not contest. The FBI agents were therefore permitted to enter the residence and conduct a protective sweep for their safety, incident to the arrest of Boyer. Maryland v. Buie, 494 U.S. 325, 327 (1990) (holding that the Fourth Amendment permits a protective sweep made incident to arrest when the searching officer possesses a reasonable belief based on specific and articulable facts and rational inferences "that the area swept harbored an individual posing a danger to the officer or others" (citations omitted)); see also Payton v. New York, 445 U.S. 573, 602–03 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").

Finally, Boyer again fails to make the substantial preliminary showing required for a Franks hearing. Even if the 2018 affidavit contained false statements or material omissions—and the Court has concluded that it did not—Boyer fails to show how they would be material to the magistrate judge's probable cause determination. See Yusuf, 461 F.3d at 383. The warrant that resulted was facially valid, and the Court sees no reason to exclude evidence that the agents obtained in their good faith execution of it. See Leon, 468 U.S. 897.

## V. Conclusion

For the foregoing reasons, the Motions to Suppress Evidence Obtained From 3234 N. Sydenham Street filed by Defendants Boyer, Gadson, and Harmon, (ECF 159, 215, 260, 295), are DENIED.

An appropriate Order follows.

O:\Criminal Cases\18cr249 US v West et al\18cr249-6, -8, -9 Memo re Mots to Suppress Evid